IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELLEN JEAN MITCHELL, *et al.*,
    *Plaintiffs*,

v.

Civil Action No. ELH-18-2908

TARGET CORPORATION,
    *Defendant*.

## MEMORANDUM OPINION

In this tort litigation, plaintiffs Ellen and James Mitchell filed suit against Target Corporation ("Target"). ECF 1-3 ("Complaint").[1] Plaintiffs allege that, due to the negligence of Target, Ms. Mitchell sustained serious injuries on July 31, 2015, when she slipped and fell while shopping at a Target store in Salisbury, Maryland (the "Store"). *Id.* In addition, plaintiffs, who are husband and wife, assert a claim for loss of consortium.

Target has moved for summary judgment (ECF 20), supported by a memorandum of law. ECF 29 (collectively, the "Motion") and seven exhibits. ECF 29-1 to ECF 29-7. Plaintiffs oppose the Motion (ECF 31-1), supported by two exhibits. ECF 31-2; ECF 31-3. Defendant has replied. ECF 33.

The Motion has been fully briefed and no hearing is necessary to resolve it. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion. ECF 29.

---

[1] Plaintiffs filed suit in the Circuit Court for Wicomico County on July 30, 2018. ECF 1 ("Notice of Removal"). Defendant timely removed this case to federal court on September 9, 2018, on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332. *Id.*

## I.    Background

On the evening of July 31, 2015, Ms. Mitchell went back-to-school shopping at the Store. ECF 29-1 (Ellen Mitchell Deposition) at 73; ECF 29-2 (Karrsin Mitchell Deposition) at 16.[2]  She was accompanied by her daughter, Karrsin Mitchell, and her granddaughter, Hanahsin Henry. ECF 29-1 at 73; ECF 29-2 at 12, 33.[3]  At the time, Ms. Mitchell was approximately fifty-nine years old, ECF 29-1 at 38; Karrsin was approximately fifteen, ECF 29-2 at 13; and Hanahsin was approximately twelve.  ECF 29-1 at 11.

While Ms. Mitchell was at the check-out, a cashier told her about a sale that the Store was having on shoes.  ECF 29-1 at 74; ECF 29-2 at 17.  After purchasing her items, Ms. Mitchell went with Karrsin and Hanahsin to the shoe department, which was located towards the back of the Store.  ECF 29-2 at 17.  Finding nothing of interest, they decided to leave.  *Id.* at 17-18.  They proceeded towards the exit by walking through the baby clothing and baby products aisles.  ECF 29-1 at 77; ECF 29-2 at 18.

As the group walked toward the exit, Ms. Mitchell, who was wearing "Flip Flops," stepped on a clear, slick substance on the tile floor.  ECF 29-1 at 80; ECF 29-2 at 35-36; ECF 29-3 (Guest Incident Report).  Neither Ms. Mitchell nor Karrsin saw the substance before Ms. Mitchell stepped in it.  ECF 29-1 at 78; ECF 29-2 at 34.  According to Karrsin, the puddle of liquid was roughly 8 to 12 inches in diameter.  ECF 29-2 at 32.  As soon as Ms. Mitchell stepped on the liquid, she "just

---

[2] Citations are to the electronic pagination as it appears on the docket.  Because several individuals have the same surname, I shall refer to some individuals by their first names, in order to differentiate them.

[3] Ms. Mitchell is the legal guardian of both Karrsin and Hanahsin.  At Karrsin's deposition, she referred to Hanahsin as her sister, *see, e.g.*, ECF 29-2 at 12, 37, presumably because they are close in age.  But, Hanahsin is actually Ms. Mitchell's grandchild.  *See* ECF 29-1 at 11-13.

flew up in the air and went down." ECF 29-1 at 80. She fell hard, hitting her head on the tile floor. *Id.* at 84. Karrsin sent Hanahsin to find a Target associate, as Karrsin crouched down beside her mother. ECF 29-2 at 36.

Target employee Bryan Willin, who was the first of two Target employees to respond to the scene, described the spill as an "oily substance . . . approx 10 to 12″ in diameter (clear)." *See* ECF 29-4 (Willin Team Member Witness Statement). The substance has never been identified, however. ECF 29-1 at 78-79.

Both Ms. Mitchell and Karrsin acknowledged at their depositions that they did not know the nature of the substance, how it got on the floor, or how long it had been on the floor. ECF 29-1 at 79; ECF 29-2 at 48, 66. As Karrsin put it, they "just know that something slick and oily was there." ECF 29-2 at 28. She also indicated that, in addition to a large spot, there were two or three "little dribbles" around it. *Id.* at 33.

Notably, "within seconds, 30 seconds, when the fall occurred," a couple walked around the corner, because they heard Ms. Mitchell scream. *Id.* at 37. Ms. Mitchell and Karrsin both described the man as a white male dressed in a navy-blue shirt with the insignia of a volunteer fire department. ECF 29-1 at 86-87; ECF 29-2 at 48-49. The man asked if plaintiff was "all right" and if she "need[ed] help." ECF 29-2 at 37. Karrsin said that her mother slipped. *Id.* Karrsin testified that, in response, the man said: "My wife had just slipped in a spot and I had just talked with an associate, or whoever, someone at the front of the store who worked there, that there was something on their floors." *Id.* at 52; *see also id.* at 37. The man asked Karrsin if he could help Ms. Mitchell and said that "he had been doing work with the volunteer fire company[.]" *Id.* at 53. He told Karrsin that he had experience "with people who have . . . been injured[.]" *Id.*

The man squatted down next to Ms. Mitchell, took hold of her arm, and asked if she was okay. ECF 29-1 at 84. According to Ms. Mitchell, the man said to her: "I just went up there and told them my wife nearly slipped here." *Id.* at 91; *see also id.* at 85. Ms. Mitchell recalled that the man sounded "a little bit aggravated." *Id.* at 91. The man then asked someone to bring him a pillow for Ms. Mitchell. *Id.* at 88. Although the man stayed with Ms. Mitchell until the paramedics arrived, *id.* at 84, neither Ms. Mitchell nor Karrsin obtained the man's name or contact information. *Id.* at 86; ECF 29-2 at 60.

No Target employee witnessed the accident. Justin Giles, an assistant manager at the Store, arrived at the scene approximately five minutes after Ms. Mitchell's fall. ECF 29-2 at 73-74. Ms. Mitchell was still on the floor. Giles spoke with Karrsin. ECF 29-2 at 54-55. He asked Karrsin how her mother fell, requested her contact information, and inquired about what kind of shoes Ms. Mitchell was wearing. *Id.* at 58-60. Giles and Ms. Mitchell did not talk, although when Giles asked Karrsin about her mother's shoes, Ms. Mitchell interjected that her shoes came from Target. ECF 29-1 at 93-94.

Ms. Mitchell testified during her deposition that sometime after the accident Karrsin told her that Giles talked with the fireman. ECF 29-1 at 89, 92. According to Ms. Mitchell, Karrsin said that the fireman "got really testy" with Giles. *Id.* at 94. In contrast, Karrsin testified that she did not see Giles speak with the volunteer fireman. ECF 29-2 at 54, 75. And, Karrsin acknowledged that she did not mention her conversation with the man to Giles. Id. at 76-77.

An ambulance was summoned to the store at 8:14 P.M., and it arrived approximately ten minutes later. ECF 29-7 (Prehospital Care Report). Ms. Mitchell was carried out of the store on a stretcher and taken to Peninsula Regional Medical Center. ECF 29-2 at 55. Plaintiffs allege that,

as a result of the slip-and-fall, Ms. Mitchell fractured her left femur, causing "great physical pain and mental anguish." ECF 1-3, ¶ 7.

The unidentified man is not mentioned in either the Team Member Witness Statement or Guest Incident Report completed by Willin or the Leader on Duty Investigation Report completed by Giles. ECF 29-3 (Guest Incident Report); ECF 29-4 (Team Member Witness Statement); ECF 29-5 (Leader on Duty Investigation Report). In response to the question "Who was at the scene when you arrived? (Please list names)," included on the Team Member Witness Statement form, Willin wrote: "Guest who fell and her daughter and granddaughter." ECF 29-4 at 2. And, during his deposition, Giles stated that he did not recall a man being on the scene or anyone asking him for a pillow. ECF 29-6 (Giles deposition) at 68-69. Further, he testified that if he saw someone rendering aid to an injured guest, he would have interviewed the witness. *Id.*

## II. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  But, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24.  And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

### III.   Discussion

### A.  Choice of Law

As a preliminary matter, a federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Neither party explicitly addresses the matter of choice of law. The law of the forum state, Maryland, guides this Court's choice-of-law analysis. *See Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011).

For tort claims, Maryland applies the principle of *lex loci delicti*, *i.e.*, the law of the "place of the alleged harm." *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007). Because Ms. Mitchell was injured while shopping at a Target store located in Maryland, I shall

apply the substantive tort law of Maryland as to plaintiffs' negligence and loss of consortium claims. *See Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209 (1983).

## B. Negligence Claim

In the Motion, Target argues that plaintiffs cannot recover for negligence, because they cannot establish that Target breached the duty of care it owed Ms. Mitchell. Specifically, Target contends that plaintiffs have failed to provide evidence showing that it had actual or constructive knowledge of the slippery substance on the floor. ECF 29-1 at 9. Proof of actual notice is wanting, defendant asserts, because the only evidence plaintiffs provide to show that Target knew or should have known of the spill when Ms. Mitchell fell are the statements of the unidentified man, which are inadmissible hearsay. *Id.* at 9-16. Further, defendant maintains that, even if the statements are admissible, it is still entitled to summary judgment because there is no evidence in the record establishing that Target had sufficient time to cure the hazardous conditions after learning of it. *Id.* at 16-17. As for constructive notice, defendant argues that plaintiffs have failed to put forth any evidence that the slick substance was on the floor for such a period of time that Target should have known of its existence. *Id.* at 17-20.

Plaintiffs do not appear to contest that Target lacked constructive knowledge of the spill. Instead, they maintain that Target had actual notice. They insist that the statements are admissible under the excited utterance exception to the hearsay rule. ECF 31-1 at 5-6. In their view, the unidentified man's statements create a genuine dispute of material fact as to whether Target had actual notice of the substance on the floor. *Id.* at 4.

### 1. Proof of negligence

To establish a negligence claim in Maryland, the plaintiff must prove the following: "(1) the defendant owes the plaintiff a duty of care; (2) the defendant breached that duty; (3) the plaintiff

sustained an injury or loss; and (4) the defendant's breach of the duty was the proximate cause of the plaintiff's injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 611, 155 A.3d 445, 451 (2017) (citing *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013)); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'" (alterations in *Schultz*) (quoting *Jacques v. First Nat. Bank of Md.*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986))).

"In 'slip and fall' cases, the duty of care owed by an owner or occupier of a premises is a function of his legal relationship to the person entering on the premises." *Garner v. Supervalu, Inc.*, 396 F. App'x 27, 29 (4th Cir. 2010) (per curiam); *see, e.g., Casper v. Chas. F. Smith & Son, Inc.*, 316 Md. 573, 578, 560 A.2d 1130, 1133 (1989) (the duty of an owner or occupier of land "depends upon the status of the plaintiffs at the time of the accident"). Specifically, in Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (*i.e.*, a business invitee), a licensee by invitation (*i.e.*, a social guest), a bare licensee, or a trespasser. *Balt. Gas & Elec. Co. v. Lane*, 338 Md. 34, 44, 656 A.2d 307, 312 (1995); *Wagner v. Doehring*, 315 Md. 97, 101-02, 553 A.2d 684, 686 (1989); *Rowley v. Mayor of Baltimore*, 305 Md. 456, 464-65, 505 A.2d 494, 498 (1986). "The highest duty is owed to a business invitee, defined as 'one invited or permitted to enter another's property for purposes related to the landowner's business.'" *Norris v. Ross Stores, Inc.*, 159 Md. App. 323, 334, 859 A.2d 266, 273 (2004) (citations omitted); *see Lane*, 338 Md. at 44, 656 A.2d at 312; *Howard Cty. Bd. of Educ. v. Cheyne*, 99 Md. App. 150, 155, 636 A.2d 22, 25 (1994), *cert. denied*, 335 Md. 81,

642 A.2d 192 (1994). For purposes of summary judgment, defendant does not challenge plaintiffs' characterization of Ms. Mitchell as a business invitee.

An owner or occupier of land has a duty to exercise reasonable care to "protect the invitee from injury caused by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. *Casper*, 316 Md. at 582, 560 A.2d at 1135; *see Lane*, 338 Md. at 44, 656 A.2d at 312 (stating that an owner owes "a duty of ordinary care to keep the property safe for the invitee"); *Evans v. Hot Shoppes, Inc*., 223 Md. 235, 239, 164 A.2d 273, 276 (1960); *Tennant v. Shoppers Food Warehouse Md. Corp*., 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997); *Pahanish v. Western Trails, Inc*., 69 Md. App. 342, 355, 517 A.2d 1122, 1128 (1986). The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers. *Tennant*, 115 Md. App. at 388, 693 A. 2d at 374.

In *Gillespie v. Ruby Tuesday, Inc*., 861 F. Supp. 637 (D. Md. 2012), Judge Blake of this Court explained: "The duty owed to an invitee is 'to use reasonable and ordinary care to keep [the] premises safe for the invitee and to protect [the invitee] from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for [the invitee's] own safety will not discover.'" *Id*. at 641 (quoting *Deboy v. City of Crisfield*, 167 Md. App. 548, 555, 893 A.2d 1189, 1193 (2006) (modifications in *Deboy*)); *accord Garner*, 396 F. App'x at 29; *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265, 267 (1972); *see also Pahanish*, 69 Md. App. at 355, 517 A.2d at 1128 ("At common law, the landowner's duty to business invitees is to use reasonable and ordinary care to keep his premises in a safe condition and to protect invitees against the dangers of which the landowner is aware or which, with reasonable care, he could have discovered.").

Although the business invitor has a duty to protect against unreasonably dangerous conditions, that duty is not without limits. *Moulden v. Greenbelt Consumer Servs., Inc*., 239 Md. 229, 232, 210 A.2d 724, 725 (1965); *Lexington Mkt. Auth. v. Zappala*, 233 Md. 444, 446, 197 A.2d 147, 148 (1964). "'[S]torekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeeper's premises.'" *Rehn v. Westfield Am*., 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003) (quoting *Giant Food, Inc. v. Mitchell*, 334 Md. 633, 636, 640 A.2d 1134, 1135 (1994)), *cert. denied*, 380 Md. 619, 846 A.2d 402 (2004). Thus, the invitee has a duty to exercise due care for his or her own safety, including the duty to look and see what is around the invitee. And, the owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger. *See Casper*, 316 Md. at 582, 560 A.2d at 1135; *Tennant,* 115 Md. App. at 389, 693 A.2d at 374.

To prove that the invitor breached its duty of care in a slip-and-fall case, the invitee must show "not only that a dangerous condition existed, but also that the proprietor 'had actual or constructive knowledge of it, and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn the invitee.'" *Rehn*, 153 Md. App. at 593, 837 A.2d at 984 (quoting *Keene v. Arlan's Dep't Store of Balt., Inc*., 35 Md. App. 250, 256, 370 A.2d 124, 128 (1977)); *see Zilichikhis v. Montgomery Cty*., 223 Md. App 158, 187, 115 A.3d 685, 702 (2015), *cert. denied*, 444 Md. 641, 120 A.3d 768 (2015); *Joseph v. Bozzuto Mgmt. Co*., 173 Md. App. 305, 315-316, 918 A.2d 1230, 1235 (2007); *see also Adams v. Kroger Ltd. P'ship*, 527 Fed. App'x 265, 268 (4th Cir. 2013) (per curiam). Ordinarily, whether a defendant was negligent is a question for the fact finder. *Kroger*, 527 Fed. App'x at 268.

## 2. Breach of duty

The parties do not dispute that Target owed Ms. Mitchell, a business invitee, the duty "to use reasonable and ordinary care to keep the premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." *Casper*, 316 Md. at 560, 560 A.2d at 1135. Thus, the first element of plaintiffs' negligence is satisfied. So too is injury and causation, the third and fourth negligence elements. There is no disagreement that Ms. Mitchell slipped on a substance on the Store's floor as she walked toward the exit and that she suffered injuries as a result of the fall. ECF 29-2 at 29 (testifying that the area where Ms. Mitchell fell was "slick and oily"); ECF 29-4 at 2 (describing an "oily substance close to where guest was on ground approx 10 to 12″ in diameter (clear)").

Whether Target is liable for Ms. Mitchell's fall boils down to the second element: whether Target breached the duty of care it owed to Ms. Mitchell. And, in the context of this case, the breach of duty issue turns on whether Target "'had actual or constructive knowledge'" of the substance on the floor and whether Target learned of the hazard "'in sufficient time'" to have prevented Ms. Mitchell's fall. *Rehn*, 153 Md. App. at 593, 837 A.2d at 984 (citation omitted).

As noted, plaintiffs maintain that Target had actual knowledge of the spill; they do not rely on constructive knowledge. At her deposition, Ms. Mitchell acknowledged that she never determined what the liquid was or where it came from. ECF 29-1 at 78-79. Likewise, Karrsin admitted during her deposition that she did not know what the substance was or how it got on the floor. ECF 29-2 at 29, 48. Accordingly, the viability of plaintiffs' negligence claim turns on whether they can establish that Target had actual notice of the spill and that Target had sufficient time to clean it up, so as to prevent the fall.

### a. Actual notice of the hazard

Target maintains that it is entitled to summary judgment because there is no evidence showing that it knew about the slick substance on the floor before Ms. Mitchell's fall. ECF 29 at 9. Defendant argues strenuously that the Court cannot consider the statements by the unidentified man whom Ms. Mitchell and Karrsin identified as a volunteer fireman because they are "classic hearsay . . . and are thus inadmissible." *Id.* at 11. In response, plaintiffs argue that the unidentified man's statements to Karrsin and Ms. Mitchell are properly before the Court, under the excited utterance exception to the hearsay rule. ECF 31-1 at 5. And, according to plaintiffs, these statements create a genuine dispute with regard to actual notice, thus precluding summary judgment in defendant's favor. *Id.* at 4.

"On a motion for summary judgment, a district court may only consider evidence that would be admissible at trial." *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 798 (D. Md. 2001) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 973 (4th Cir. 1990)). Accordingly, at the summary judgment stage, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). To the extent that evidence is hearsay that is inadmissible at trial, it "cannot be considered on a motion for summary judgment." *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991); *see also Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "'hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment'" (citation omitted)); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Thus, it is well settled that "hearsay statements . . . cannot support or defeat a motion for summary judgment." *Barnes v. Montgomery Cty.*, 798 F. Supp. 2d 688, 691 (D. Md. 2011).

Rule 104(a) of the Federal Rules of Evidence ("FRE" or "Fed. R. Evid.") provides: "The court must decide any preliminary question about whether . . . evidence is admissible." And, the proponent of hearsay evidence must prove to the court by a preponderance of the evidence that the statement falls within an exception to the hearsay rule such that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

Hearsay is defined by FRE 801(c) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is "not admissible," absent a rule of evidence or other statute or rule that renders it admissible. Fed. R. Evid. 802. However, out-of-court statements are "not hearsay" if they are "not offered 'to prove the truth of the matter asserted.'" *United States v. Vidacak*, 553 F.3d 344, 352 (4th Cir. 2009) (quoting Fed. R. Evid. 801(c)). Moreover, there are several exceptions to the rule against hearsay, by which an out of court statement may be offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(d), 803, 804.

One exception to the hearsay rule is the exception for excited utterances. Fed. R. Evid. 803(2). Found in Rule 803(2), this exception permits the admission of any "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Such spontaneous declarations are excepted from the hearsay rule because they are thought to be "made in contexts that provide substantial guarantees of their trustworthiness." *White v. Illinois*, 502 U.S. 346, 355 (1992); *see also Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010) ("At its essence, the hallmark of all exceptions to the hearsay rule is the 'guarantee of trustworthiness.'") (quoting *Miller v. Keating*, 754 F.2d 507, 510 (3rd Cir. 1985)).

In particular, the veracity of excited utterances is premised on the belief "that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable.'" *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003) (quoting *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001)); *see also Brunsting*, 601 F.3d at 817 (noting that the excited utterances "exception 'derives from the teaching of experience that the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness.'" (quoting *United States v. Sewell*, 90 F.3d 326, 327 (8th Cir.1996))). Accordingly, for a statement "[t]o qualify under the excited utterance exception, (1) the declarant must have 'experienced a startling event or condition'; (2) she must have related the statement 'while under the stress or excitement of that event or condition, not from reflection'; and (3) the statement or utterance must have 'related[ed] to the startling event or condition.'" *United States v. Jennings*, 496 F.3d 344, 349 (4th Cir. 2007) (alterations in original) (quoting *Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988) and Fed. R. Evid. 803(2)); *see also* KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 272 (7th ed. 2016) ("Formulations of the [excited utterances] exception differ, but all agree on two basic requirements. First, there must be an occurrence or event sufficiently startling to render inoperative the normal reflective thought processes of the observer. Second, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought.").

In evaluating whether a statement qualifies as an excited utterance, "several factors must be considered": "(1) The lapse of time between the event and the declarations; (2) the age of the declarant; (3) the physical and mental state of the declarant; (4) the characteristics of the event; and (5) the subject matter of the statements. *Morgan*, 846 F.2d at 947 (citing *United States v. Iron*

15

*Shell*, 633 F.2d 77, 85-86 (8th Cir. 1980)); *see also Alexander*, 331 F.3d at 123 ("[R]elevant factors include: the characteristics of the event; the subject matter of the statement; whether the statement was made in response to an inquiry; and the declarant's age, motive to lie and physical and mental condition."). Nonetheless, "[a]t bottom, the analysis must focus on whether the declarant's statement was trustworthy by being made in circumstances where it would not be reasonable to conclude that the declarant fabricated the statement or incorrectly remembered the events related." *Jennings*, 496 F.3d at 350.

As indicated, Target contends that the statements of the of the unidentified man are inadmissible hearsay and thus cannot be used to defeat summary judgment. ECF 29 at 16. Regarding plaintiff's conversation with the individual, Ms. Mitchell testified, in relevant part, ECF 29-1 at 84:

> I was in a daze. . . . And then I remember looking up, and this gentleman was— kind of grabbed my arm, and he said—he said are you okay? And I can remember him stating I went up there and told them that my wife like to fell [sic]. And—and he stayed with me the whole time.

The following deposition testimony of Ms. Mitchell is also pertinent, *id.* at 85-86, 93-94:

> Q: All right. Anything else you—so you remember him saying that he had gone and told somebody that his wife almost fell?
>
> A: Yes.
>
> Q: Now, do you know when he went and told anybody prior to your fall?
>
> A: No. He just told me he went—that he went and told someone his wife nearly slipped. And then the next thing was to get me a pillow. He told the manager to get me a pillow because I could – you know, the way I was laying, my head kept going down, like, you know. And they brought me a pillow.
>
> Q: And you don't know who he told at Target? He never told you that, and you don't know?

16

A: He said he went to the desk. That's—I—I do know that. He went to the desk and told them.

Q: Do you know what desk?

A: No, I do not.

*　　*　　*

Q: Anything else you can remember he said?

A: No. He talked to my daughter more than . . .

Q: All right. Do you know if it's possible that when he came up to you to say I told Target that my wife almost slipped, do you know whether he told them before you slipped or after you slipped?

A: He said I just went up there and told them that my wife nearly slipped here, and that's what he said. That's—you know, he said I went up there and told them, you know, that—that my wife nearly slipped, and that's when he—he come back.

Q: Okay.

A: He was very—he wasn't very happy about the whole—that, I do know.

Q: Why do you know that?

A: Because in the tone of his voice, he was a little—he was a little angry. . . .

Karrsin was also deposed.  ECF 29-2.  The following testimony is pertinent, *id.* at 37:

Q: . . . .So can you describe for me your mother's fall and what happened immediately afterward?

A: . . . . And during the time my sister[4] had left, a fireman and his wife, a volunteer fireman, walked around the corner within seconds, 30 seconds, when the fall occurred and he was like are you all right? You know, do you need help? They had heard that my mom had screamed. I said she just slipped. And when he—I said that she had just slipped, he had said that his wife had just slipped in a substance and that they had went up to the counter and said that there was something to an

---

[4] As noted, Karrsin referred to Hanashin as her sister.

associate, a cashier, whoever it may have been, and said that there was something on their floors and that his wife, you know, could have hurt herself.

Karrsin was also asked what the man said. She recalled, *id.* at 52:

He said, Is she all right? She had seen—he had seen my mother on the floor and saw me crouching and I had made eye contact with him. He said, Is she all right? What happened? I said, She's just slipped. He said, My wife had just slipped in a spot and I had just talked with an associate, or whoever, someone at the front of the store who worked there, that there was something on their floors. And he had told me that he had done that because she had almost slipped and fallen and he had, you know, provided her support, had, you know, grabbed her arm or whatever it may be, and they immediately told somebody because they were afraid that someone would get hurt. That's what he told me. And that's when he started offering support to my mother because she was in serious pain.

When asked if the man said anything else, Karrsin added, *id.* at 53:

He had said when he—before he had offered helping my mother, he asked first if he could help and provide assistance to her because he had mentioned that he had been doing work with the volunteer fire company, you know, he's been with people who have been in instances where they've been injured and he wanted to make sure that it was all right with me before he could crouch down and touch her. Or if she was going to attempt to get up, if it would be okay for her—him to assist.

The unknown person's statements are quintessential hearsay. Plaintiffs seek to use the man's out-of-court statements "to prove the truth of the matter asserted," *i.e.,* that he alerted a Target employee about the slippery floor before Ms. Mitchell fell. Fed. R. Evid. 801(c). Therefore, the statements are inadmissible, and cannot be considered in deciding defendant's summary judgment motion, unless they qualify under an exception to the hearsay rule. And, as noted, plaintiffs maintain that the statements are properly before the Court because they constitute excited utterances under Fed. R. Evid. 803(2). ECF 31-1 at 5-6.

According to plaintiffs, the statements fall within FRE 803(2) because the man came upon Ms. Mitchell immediately after she fell on the floor; he made his statements spontaneously, moments after arriving on the scene, and the statements directly relate to the accident. *Id.*

Although the man's identity is unknown, plaintiffs point out that the excited utterances exception does not require that the declarant be available to testify. *Id*. at 5

Target contends that this argument "fails for multiple reasons." ECF 33 at 2. It asserts that "the fact that Plaintiffs cannot identify this volunteer fireman militates against admissibility of his statements[.]" *Id*. at 3.[5] Further, defendant argues that plaintiffs cannot lay a foundation that the man was under the "stress of excitement" when speaking with Karrsin and Ms. Mitchell. *Id*. at 4 (quoting Fed. R. Evid. 803(2)). And, defendant directs the Court to *Shinners v. K-Mart Corp.*, 847 F. Supp. 31 (D. Del. 1994), a case which it contends is on all fours. ECF 33 at 2-3.

*Shinners*, 847 F. Supp. 31, is instructive. In that case, Helen Shinners and her husband filed a negligence action against K-Mart to recover for a fall Ms. Shinners suffered while shopping. *Id*. at 32. K-Mart moved for summary judgment against the plaintiffs on the ground that they could not prove that K-Mart had actual notice of the spill that caused the accident. To prove actual notice, plaintiffs offered "the statement of an unidentified man that his wife had also fallen on the same spot 'back awhile ago,'" which plaintiffs argued was admissible as an excited utterance. *Id*. at 33. The court disagreed. *Id*. at 34. It opined: "In the present case, the declarant made a statement, heard only by Ms. Shinners, after he saw an elderly woman fall on her side. To hold that this statement was an excited utterance would require this Court to go beyond the 'very outer bounds' of its permissible discretion." *Id*. (quoting *David By Berkeley v. Pueblo Supermkt.*, 740

---

[5] To support this proposition, defendant relies on the following language from *Navarette v. California*, 572 U.S. 393, 408 (2014): "It is even unsettled whether excited utterances of an unknown declarant are *ever* admissible. A leading treatise reports that 'the courts have been reluctant to admit such statements, principally because of uncertainty that foundational requirements, including the impact of the event on the declarant, have been satisfied.'" ECF 33 at 4 (emphasis in *Navarette*). However, Target omits that this language is from Justice Scalia's dissent, not the majority opinion.

F.2d 230, 235 (3d Cir. 1984)). Because the plaintiffs produced no other evidence as to K-Mart's knowledge of the spill, the court granted summary judgment in defendant's favor. *Id.*

Here, construing the evidence in the light most favorable to plaintiffs, they have not laid a sufficient foundation to demonstrate by a preponderance of evidence that the unidentified man's statements constituted excited utterances. Ms. Mitchell's fall constituted a startling event—at least to her and her family. ECF 32-2 at 36 (testimony of Karrsin that "[t]he impact was very loud. It sounded very painful. And she had rolled over to her side in pain in the fetal position."); *see also Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*, 136 F. App'x 489, 494 (3d Cir. 2005) (finding plaintiff's fall from a porch "was certainly a 'startling occasion'" (citation omitted)). Undoubtedly, hearing a loud thud while shopping and then turning the corner to find a woman on the ground, in pain, could be a startling event. Although there is no evidence that the man witnessed the accident, he arrived at the scene "within . . . 30 seconds [of] the fall[.]" ECF 29-2 at 37. Thus, the record is sufficient to find that the man "experienced 'a startling event or condition[.]'" *Jennings*, 496 F.3d at 349.

But, the record cannot support the conclusion that the man's statements were made "'while under the stress or excitement of that event or condition, not from reflection,'" *id.*, so as to satisfy FRE 803(2).

As indicated, the statements were made in close temporal proximity to Ms. Mitchell's fall. ECF 29-1 at 84; ECF 29-2 at 37. But, timing is not dispositive. *Jennings*, 496 F.3d at 350 ("The lapse of time between the event and the declaration is just one of several factors to consider . . . "). Notably, the description of the man, as provided by Ms. Mitchell and Karrsin, hardly paints a picture of a person "in a state of shock, anger, and confusion." *Jennings*, 496 F.3d at 349. Ms. Mitchell testified that she thought the man sounded "a little angry" when he spoke with her, ECF

29-1 at 94, because he had complained at "the desk" that his wife nearly fell. *Id.* at 85. However, the man told Karrsin that he was a volunteer firefighter and had "been with people . . . in instances where they've been injured[.]" ECF 29-2 at 53. He asked Karrsin if he could render aid before touching Ms. Mitchell. *Id.* And, after checking to see if Ms. Mitchell was alert, he directed someone to bring him a pillow. ECF 29-1 at 85. The evidence suggests that the man was acting in a calm, reflective, and deliberate fashion when he assisted Ms. Mitchell.

The fact that the declarant is not just unavailable but *unidentified* further militates against admitting the statements as excited utterances. Fed. R. Evid. 803(2) does not categorically exclude statements by unidentified declarants. *See Miller v. Keating*, 754 F.2d 507, 510 (3d Cir. 1985) ("We do not conclude, however, that statements by unidentified declarants are ipso facto inadmissible under Fed. R. Evid. 803(2)."); *accord Silas v. Target Corp.*, 569 F. App'x 405 (6th Cir. 2014) (per curiam) (holding that statements by unidentified declarant were admissible under Rule 803(2)). However, where the declarant is both unavailable and unidentified, the "party seeking to introduce such a statement carries a burden heavier than where the declarant is identified to demonstrate the statement's circumstantial trustworthiness." *Id.*; *see also Gainer v. Wal-Mart Stores East, L.P.*, 933 F. Supp. 2d 920, 929-30 (E.D. Mich. 2013); *Cummiskey v. Chandris*, S.A., 719 F. Supp. 1183, 1187 (S.D. N.Y. 1989); *Ramrattan v. Burger King Corp.*, 656 F. Supp. 522, 528 (D. Md. 1987); MCCORMICK ON EVIDENCE § 272 ("[I]f the identity of the bystander-declarant is undisclosed, the courts have been reluctant to admit such statements, principally because of uncertainty that foundational requirements, including the impact of the event on the declarant, have been satisfied."). Indeed, the advisory committee's notes to Fed. R. Evid. 803 provide: "[W]hen declarant is an unidentified bystander, the cases indicate hesitancy in upholding the statement

alone as sufficient, a result which would under appropriate circumstances be consistent with the rule."

The record does not contain circumstantial indicia of reliability. The man's statements that his wife almost fell and that he told Target about the slippery floors were heard only by Ms. Mitchell, a party, and her daughter. None of the reports created by Target employees after the incident mention any witnesses, besides Karrsin and Hanahsin. ECF 29-3; ECF 29-4; ECF 29-5. Giles testified that he had no recollection of a man assisting Ms. Mitchell, and he stated that had he seen someone helping her, he would have interviewed the person. ECF 29-6 at 68-69. Further, Ms. Mitchell's testimony that the man spoke with Giles, ECF 29-1 at 89, is directly contradicted by Karrsin, who testified that the man did not interact with Giles. ECF 29-2 at 50-51.

In sum, because I cannot infer by a preponderance of the evidence that the unidentified man's statements were excited utterances, the statements are inadmissible hearsay. As a result, there is no evidence whatsoever that Target had notice of the slick floors prior to Ms. Mitchell's fall.

### b. Sufficient time to remedy the hazard

Target posits that even if the man's statements are admissible, they still would not create a genuine dispute of material fact as to whether Target breached its duty of care. *Id.* at 16. That is so, Target argues, because plaintiffs cannot show that it had enough time to prevent Ms. Mitchell's fall after it learned of the spill from the unidentified man. ECF 29 at 16-17. Plaintiffs do not respond to this argument.

To show that the invitor breached its duty of care under Maryland law, the plaintiff must establish that "the proprietor 'had actual or constructive knowledge of [the hazard], *and that that knowledge was gained in sufficient time to give the owner the opportunity to remove it or to warn*

*the invitee.*'" *Rehn*, 153 Md. App. at 593, 837 A.2d at 984 (emphasis added) (quoting *Keene*, 35 Md. App. at 256, 370 A.2d at 128); *see also Daniel v. Moran Foods, LLC*, CBD-17-2693, 2018 WL 3862232 at *2-3 (D. Md. Aug. 14, 2018) (discussing the "sufficient time" requirement). Thus, notice alone is insufficient to establish liability; the invitor must also have had a "sufficient opportunity to either correct the problem or warn its other customers about it" before the accident occurred. *Rehn*, 153 Md. App. at 593, 837 A.2d at 984. As the Maryland Court of Special Appeals has explained, *id*.:

> Whether there has been sufficient time for a business proprietor to discover, cure, or clean up a dangerous condition depends on the circumstances surrounding the fall. What will amount to sufficient time depends upon the circumstances of the particular case, and involves consideration of the nature of the danger, the number of persons likely to be affected by it, the diligence required to discover or prevent it, opportunities and means of knowledge, the foresight which a person of ordinary care and prudence would be expected to exercise under the circumstances, and the foreseeable consequences of the conditions.

(Internal quotation marks and citations omitted).

*Rhen*, 153 Md. App. 586, 837 A.2d 981, provides guidance. There, Maryland's intermediate appellate court was asked to decide, *inter alia*, whether the circuit court erred in ruling that Chick-fil-A did not breach its duty of care to the plaintiff, who slipped on a spilled soda, where the Chick-fil-A employees learned of the spill less than four minutes before the fall. *Id.* at 594, 837 A.2d at 986. On appeal, the plaintiff argued that summary judgment in favor of Chick-fil-A was improper because there was evidence that the employees had actual notice of the spill. Rejecting this contention, the court stated, *id.* at 594-95, 837 A.2d at 985:

> We agree that Chick–fil–A had actual notice. But such notice, by itself, did not preclude summary judgment, because the dispositive issue here was not whether Chick–fil–A's employee knew about the spill, but rather, how long she knew about it before she did something about it. In practical terms, did [the employee] have enough time after she learned about the spill to do something that ultimately might have prevented Rehn's fall?

23

We agree with the circuit court that there is no evidence in the summary judgment record from which a jury reasonably could infer that she had enough time to do so. [The employee's] testimony was undisputed that as soon as the customer pointed out the spill, she looked out and saw it for the first time, then "opened the door" next to her station and "hollered back there, 'Someone call for a spill[.]'" It was while she was "in the act" of notifying her co-worker that Rehn fell.

Thus, the Maryland Court of Special Appeals affirmed the circuit court's grant of summary judgment in favor of the defendant because there was "nothing in the summary judgment record from which a juror reasonably could infer that Chick–fil–A acted unreasonably when it learned about the spill." *Id.*

Even if I were to assume, for the sake of argument, that the unknown man's statements were admissible, plaintiffs' negligence claim still could not survive summary judgment because the record is devoid of evidence showing that Target had sufficient time to clean up the spill or warn Ms. Mitchell after the man alerted a store employee. Absent such evidence, a jury would be left to speculate whether defendant acted unreasonably upon learning of the spill. *Compare Kroger*, 522 Fed. App'x at 269 (stating, in case where the evidence showed 19 minutes between spill and fall, that it was for jury to determine whether the length of time was sufficient to conclude that store had constructive notice); *Daniel*, 2018 WL 3862232 at *3 (denying summary judgment where video footage established that defendant was aware of spill for two minutes before accident).

Here, the unidentified man's statements do not remedy this fatal deficiency. He did not tell Karrsin or Ms. Mitchell how much time had elapsed between when he spoke to a Target employee and Ms. Mitchell's fall. *Compare Silas*, 569 F. App'x at 407 (finding genuine dispute where bystander's stated that "I told somebody about that spill 15 minutes ago"). Rather, he said that he "had *just* talked with an associate[.]" ECF 29-2 at 52 (emphasis added). Thus, Target could

24

have learned of the spill five seconds, five minutes, or 50 minutes before Ms. Mitchell fell; there is no way to know.

## C. Loss of Consortium

Target argues that plaintiffs' loss of consortium claim is wholly dependent on the viability of plaintiffs' negligence claim. That is, if plaintiffs cannot recover for negligence, then they cannot recover on their loss of consortium claim. ECF 29 at 1 n.1.

Maryland allows a plaintiff to recover for loss of consortium where a personal injury to one's self or one's spouse results in a "loss of society, affection, assistance, and conjugal fellowship" in the marital unit. *Oaks v. Connors*, 339 Md. 24, 37-38, 660 A.2d 423, 430 (1995). However, "[a] loss of consortium claim is derivative of the injured spouse's claim for personal injury." *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 488, 872 A.2d 969, 981 (2005) (quoting *Oaks*, 339 Md. at 38, 660 A.2d at 430); s*ee also Deems v. W. Md. Ry. Co.*, 247 Md. 95, 114, 231 A.2d 514, 525 (1967) (holding that a claim for loss of consortium arising from physical injury must be asserted simultaneously with an underlying tort action).

If defendant is entitled to summary judgment as to the negligence claim, summary judgment must also be granted as to the loss of consortium claim.

## IV.    Conclusion

Defendant is entitled to summary judgment because plaintiffs have not produced enough evidence to create a triable issue as to whether defendant breached the duty of care that it owed Ms. Mitchell.

For the foregoing reasons, the Motion (ECF 20) shall be GRANTED.  An Order follows,

consistent with this Memorandum Opinion.


Date: October 18, 2019

_____/s/_____
Ellen L. Hollander
United States District Judge